This time we will hear case number 2018-10624, United States v. Herbert Philip Anderson. You may proceed. Good morning, Your Honor. May it please the Court. I am Stan Schwiger. I am here representing Mr. Herbert Philip Anderson on two issues before this Court. Did the District Court err in failing to grant an evidentiary hearing? And upon remand, should this Court order that this matter be reassigned to a different District Judge? I'm going to return to the first issue, but I'm going to divert off just a bit in the presentation to concern the standard of review in this matter, because I think that's the important issue that overrides all of this. And I think before discussing the merits that we discuss that first. And as I stated, this Court is charged with determining whether Judge McBride abused his discretion in failing to grant Mr. Anderson an evidentiary hearing. I find most of the time in 30 years of doing appellate law that abuse of discretion standards look like the old Judge Potter Stewart standard, I know it when I see it. I would ask this Court to consider my arguments in the brief concerning the guided discretion. And I believe that this abuse of discretion standard is governed by this standard. If the motion sets for specific controverted issues of facts, which are not conclusively negated by the record, and approved at the hearing would entitle the petitioner to any relief. This provides, I believe, a platform of a legally enforceable rule of abuse of discretion that has some actual meaning. But let's return to the failure to grant the evidentiary hearing. This Court has conclusively stated that in a 2255 manner, this must be decided on the basis of evidentiary hearings. Let me ask you this. My concern is we've already heard this case once before. We already ruled. And although at the beginning we said something about having a hearing, at the end we said it was up to the judge to decide whether to have a hearing. Would have been a lot easier if we'd ruled you should have a hearing. But having not ruled that the first time, aren't we bound by law of the case that the judge properly was to consider that extra document, which was all that changed, and having considered it, determined there was an evidentiary hearing, we can't say as a matter of law that we're entitled to an evidentiary hearing. We have to review the same thing the judge reviewed and look at whether the judge abused his discretion. Isn't that the law of the case as it applies here? Exactly my point, Your Honor. Exactly. Did Judge McBride look at the statute as proclaimed in an evidentiary hearing with this new letter imposed on top of that and decide as a matter of course that he was entitled to no relief? And I think in the brief it's demonstrated that Judge McBride basically just ran to conclusory issues rather than dealing with the impact of this new letter as this court decided before. But this court did not say the new letter mandates a hearing, okay? And you're now arguing that we should say that now. And had I been on the first panel, I might have looked at it differently. I don't know. But I'm on the second panel, and I'm bound by law of the case absent manifest injustice, which you have not argued. So the law of the case was that it wasn't clear that there had to be a hearing in light of this extra letter. It sent it back to the district court to decide that, which it did. So I'm just a little bit struggling with how we address the law of the case because we're not just straight up looking at this. Well, it's merely a question, in my view, Your Honor, as did the judge abuse his discretion in making that decision. Once the letter was overlaid with the prior faxes pled in the prior writ process, did this letter change the scope of having an evidentiary hearing? He never really reached that question in the first place. He basically threw it aside, and that letter was not present at the time, as this court noted. So I believe that issue of whether he correctly applied the law in this case is exactly what is before this court. So is it your position that we didn't decide you either have to have a hearing or not to have a hearing, but we just sent it back to the district court to apply the normal rules? We weren't making a decision that you didn't have to have a hearing or that you did. We were just saying proceed on with this case like you're supposed to. My understanding of the mandate issue was that the district court was decide in light of the new letter whether an evidentiary hearing was to be required in the district court. I believe that is the issue that Judge McBride answered or didn't in his opinion, but I believe that is the issue before the court today. And that through his conduct in not having a hearing, he answered it wrong. He answered it incorrectly. That is correct. He abused his discretion in not granting an evidentiary hearing. Can you explain why an evidentiary hearing was required on this evidence? Correct, Your Honor. And I think that this court answered that well in the panel hearing, not to the extent that they basically directed him to have an evidentiary hearing, but it was all but that. And I think the standard... Why didn't they just order him to have a hearing if it was all but that? Why did we give him, as Judge Haynes pointed out, the option not to have a hearing? I think that's answered in the panel opinion prior in the sense that this letter was not before the court at that, the district court at that time, and they wanted him to take a fresher look at this time, given the delay of the letter being received. And in light of that letter, basically then coinciding with all of the other factors listed in this court's opinion as to why an evidentiary hearing should have been required. Yeah, but, I mean, to me, the judge, it's not like he just didn't have a hearing and went to sleep. I mean, he has a long order here, an 11-page order on the subject, so you can disagree with it. I understand that, but he has certainly written something. To me, the point here is we could have, in the first panel, ordered a hearing based on what was before us without looking at the letter. We did not conclude that that required a hearing because we would have had to order a hearing had we concluded that. Instead, we said, well, now we have this extra letter. So the question is, does this extra letter push us over the hearing brink, if you will? And that is exactly what the judge addressed at great length. I understand you disagree with his conclusions, but it's not like he ignored that. He, in fact, spent a lot of time on that question of whether that letter takes us from no hearing needed to pushing us over the brink. So tell me what's wrong with his analysis of that. Well, I think what he did is that he treats the letter like we're treating COVID patients who are seriously ill at this point. He sent it off to isolation and basically banished it from his consideration. Because what he didn't consider, and if you lay the two opinions aside, if you lay the opinion of the Anderson court and if you lay Judge McBride's opinions aside, side by side, they don't look the same. And I think the overriding problem with Judge McBride's opinion is that he just doesn't look at this letter. He just basically says, I don't care. I don't care about all those other fact findings or all of the ties that were introduced by this court in the Anderson panel. I don't care. It doesn't change my mind about what happened. I mean, on page three, the judge explicitly says, had the court of appeals determined that the letter warranted a hearing, presumably it would have ordered one. It did not. Thus, the court considers whether the letter would have changed the court's conclusion that movement was not entitled to an evidentiary hearing. That seems like the judge is applying the law as I understand the law based on law of the case. What is wrong with that framing of the issue? Let's look at how he framed the issue. He cited, for instance, in his opinion, that Mr. Adams' letter does not disprove the June 5th, 2009 drug transaction took place. That's a great issue. And it would matter if, in fact, that mattered at all. It's not the issue of whether the drug transaction took place. It's the issue of whether Mr. Anderson was present at that drug transaction that took place, because it was Mr. Adams' letter, Mr. Adams' testimony during trial that placed him there, that placed him in a location right outside of his residence, is what was considered his pool house, to where he is transacting a drug deal. He is interpreting a drug deal with a Mexican national named Medina. Mr. Adams said that didn't happen before. Mr. Adams said that didn't happen after that. But yet, that fact is lost upon the court. He just says, well, it doesn't disprove that that transaction took place. But that's not the issue. The issue is whether that testimony was brought forth by government intervention, through Mr. Adams, and then presented to the jury, because I can think of no more damning information than placing Mr. Anderson in the presence of a large amount of drugs. And there is simply no other evidence that concerns Mr. Anderson in dealing methamphetamine. So what do you do with the, we'll just say the weirdness of this document, which the judge does spend a lot of time on, whether, again, whether you agree with it or not, certainly doesn't ignore. The page three of three, when we don't have any other pages, you know, the different writings, I mean, there's a lot here. It's a very strange document. What is wrong with the judge's analysis of that strangeness? The problem is, is that, which is decried by the Supreme Court, and the case of March of Broda, which I cite in the brief, basically deals with this precise issue. In that matter, the Supreme Court was faced with an issue of a defendant highlighting a breach of plea bargain. And he had brought it, he couldn't bring it to the attention, according to that defendant, because he was being coerced by the U.S. Attorney's Office, and the district court, like Judge McBride here, and said, eh, it's false. Well, the Supreme Court said, and I think this court should find, that it's not the duty of the district court to make these judgments by affidavit. It is the duty of the district court to find these matters, either corroborated or not. And in that case, as here, we could look to visitor records, we could look to mail records, we could look to other sources. Specifically, they said this, not by the pleadings in the affidavits, but by the whole of testimony must it be determined whether petitioner has carried his burden of proof and shown his right to discharge. That's Supreme Court. That's the overriding problem with Judge McBride's opinion, is that basically he just dismisses this out of hand, and that's not allowed by Supreme Court law. This is a matter of, if the veracity is claimed, let's go have a hearing and figure that issue out. That's what the hearing, the evidentiary hearing, is supposed to do. And in view of basically just outright dismissing all of this, well, it's just the rantings of a lawyer in Waco. That's not the issue. The issue is, if it is, if it raises a question that rises to the level of a hearing, of an evidentiary hearing, that hearing must be granted. It was the rantings of a lawyer? Yes. In fact, I believe that was indicated in Judge McBride's opinion, and that deals with the second issue. But basically, Judge McBride accused myself of manufacturing this letter. No, I guess I'm asking you, could you specifically point to me the wording you're talking about in the opinion, the ROA 708? Or maybe you can do it on rebuttal if you can't find out. I don't want to take your time on it. It's right here. Basically, it deals on page five. It's page 706 in the record. Movement has simply offered no rational explanation for any questions surrounding the letter, but even taking the letter at face value. So basically, he identifies the letter. No explanation is given for the notation. Its language is most curious. It's incredible that the purported author articulately states the U.S. attorney coached me on how. Notably, the attorney's name and address failed to appear to be written by a different hand and with different writing implement other than the body of the letter. But I'm not saying the word ranting. Go ahead. Was the word ranting used? No, I used that word. Okay. That's what I was trying to get at because I thought I would remember that. I didn't see it. Yeah. So, Mr. Swagger, he also didn't refer to Waco or anything. This is just a colorful explanation that he's basically saying the lawyer wrote this for the person because they're not articulate enough to have written it the way it's written. Isn't that what it was just your colorful way of saying that? Is that right? I guess one could classify it as that, but when I was focused upon that at the time, I did not see it as a colorful way of articulating. No, I'm sorry. I didn't mean that Judge McBride was being colorful. I thought you were being colorful and saying it was the ranting of a Waco lawyer. Yes, yes. You're trying to just say the situation, but the situation is that he's basically saying that the lawyer must have done this because the guy couldn't have done it himself. Correct. Okay. And that's an issue that calls for an evidentiary hearing itself. I'm sorry to talk over you, Judge, but that seems to me is another question that cries for an evidentiary hearing. If these types of conclusions are made without a basis in the record, and I think that, you know, in looking at the prior cases that I cited in my brief, even if these cases get an eye roll, if nobody in the world would believe these types of claims, and if they are not provable by the affidavits alone, that requires an evidentiary hearing. Okay, your time has expired, but you saved time for rebuttal. Thank you, Your Honor. Thank you. Ms. Mitchell. Good morning. May it please the court, Amy Mitchell on behalf of the government. The first thing I want to say, in no uncertain terms, the government denies that it used false evidence to convict Mr. Anderson. Then I want to turn to the question that Judge Haynes had about the law of the case here. My reading of the prior panel's decision was sending this document back to Judge McBride and saying, does this change the calculus in whether or not a hearing is required in this case? And Judge McBride's answer to that was no. And in doing that, he didn't just set that letter aside. There's a detailed analysis of the letter itself, and then also taking that letter in light of the remainder of the evidence in the case. Counsel, in taking the letter, in his detailed analysis of the letter, wouldn't that have been helped by an evidentiary hearing? Because he made a lot of conclusions about the letter itself. For example, that the lawyer must have had a hand in it because the guy wasn't sophisticated enough to have written that phrase about being coached. How could he make that conclusion without an evidentiary hearing? I think what that initial part of his analysis is, is looking at, just as he would, and just as any of us would, looking at the reliability of a document that's being presented as evidence. And here, we look at the fact that it's not sworn, that he observed, Judge McBride observed, these other sort of discrepancies within the document itself. But shouldn't the lawyer have a chance, or the client have a chance, or someone have a chance to say, no, Judge, I did write that myself. I mean, that was written. And the lawyer say, no, I didn't write that. That's not true. They're being accused of manufacturing the letter. Shouldn't they have a chance to explain that they didn't manufacture the letter? Well, I don't read that discussion, Judge McBride's discussion on that point, as accusing the lawyer of manufacturing this letter. I don't think it goes that far. But I mean, it's important to remember here that the burden is always on the petitioner in a 2255. And part of that is you provide the court with the best evidence. And you're responsible for the form of that evidence. And here, the evidence that was provided was not sufficient to change the calculus and to require a hearing. I think what's very important here to look at is that even if, as Judge McBride said in his decision, even if we accept what Mr. Adams is saying on its face, when you compare that to the remainder of the record, the record conclusively shows that Mr. Anderson cannot prove his claim. The record as it is. The law requires that an evidentiary hearing, I'm sorry, let me just try that again. By statute, an evidentiary hearing is required unless the motion and files and records of the case conclusively show the prisoner is entitled to no relief. And this court has said that analysis requires the court to look at, does the record supplemented by the trial judge's personal knowledge or recollection conclusively negate the factual predicates asserted in support of the habeas motion? And here, because of the nature of Anderson's claim, he has to prove that the testimony was in fact false, that the government knew it was false, and that the testimony was material. And here, the record conclusively negates that Anderson's assertion that the trial testimony was false. Adams's trial testimony about Mr. Anderson being present at the June 5th, 2009 drug transaction between Thomas Jerry and Alfredo Medina, which occurred at Thomas Jerry's home. I think Mr. Schweiger may have been confusing it with some testimony by Farrell Coleman. But Adams's testimony has to do with that drug transaction that occurred at Mr. Jerry's home. That was corroborated by the wire intercepts that were taken in this case, and even more importantly, by DEA surveillance. The DEA surveillance team put Mr. Anderson at Mr. Jerry's house that day, and he was there the entire time that that drug transaction occurred. He was there when Alfredo Medina arrived. He was there when Adams arrived, and they did not see him leave. They broke off surveillance. When they saw Medina leave, they broke off surveillance and followed him. So they did not—Mr. Anderson was there the entire time. Let me ask you this. So I understand that Judge McBride had an even-if part and that that's what you were addressing just now. But I kind of want to go back to this issue of whether this document, this one-page letter, alters the scheme. Because, again, our first court could have easily said you failed to have a hearing. You should have had a hearing on what was presented to you and did not rule that way. So the law of the case is what was there on the first appeal wasn't enough. And the question of this letter, they also didn't find sufficient to mandate the hearing. They found it sufficient to take another look. Now, my question is, if we were to rule that this was enough, then this is not an affidavit versus affidavit case. This is a kind of unclear, random document case that itself says page three of three, we only have one page, et cetera, et cetera. And so does that kind of alter the calculus going forward if one will have evidentiary hearings if we were to rule in favor of Anderson? I think it would because in many other contexts in habeas and even in other sorts of underlying issues when we're talking about a hearing, whatever the parties required to present independent indicia of the merit of his allegation, that's usually done by an affidavit. And that the fact that we look for affidavits from reliable third parties in deciding whether or not an independent indicia has been shown makes Judge McBride's analysis of the face of this document even more prescient. I mean, it's not the document is unsworn. It's not particularly detailed. It doesn't say, for instance, when this supposed coaching occurred and who was present during it and the kind of detail that is typically required in order for a factual issue warranting a hearing to be raised. And it's sort of inherently inconsistent because, as I said, I just don't understand this page three of three. I just don't know how to read that and what the other two pages are. And so just on the face of it, it's a very odd document. Why it just showed up in January 2016 when the original ruling was 2014. The appellate decision was, I think, 2018. So it's kind of in the middle of the appeal. There's just a lot of questions presented by this that draw into question its validity. And it's not, again, an affidavit versus affidavit, deposition versus deposition. I said the light was red. You said it was green. It's not that kind of case, which obviously would need a hearing. I agree, Your Honor. I think looking, as I said, looking at the face of the document, it calls into question whether a hearing would even be required. I would also turn to the lack of detail in it. As I said before, you know, it doesn't say when the supposed coaching occurred or who was there or what happened or what was said. And that's very different than cases like the Machabrota case that Anderson cites to you in his brief. In Machabrota, he provided a 19-paragraph affidavit that detailed the meetings that he had with the AUSA, when they occurred, where they occurred, who was there, and in particular, who was not there,  He also tied those meetings to specific decisions that he made about pleading guilty and to specific court appearances. And so the fact that there are those detailed specific allegations made it necessary for the court to have a hearing in that particular case. That's not what's happened here. Here we have an unsworn, undetailed statement. And when that's compared to the record put in place into the remaining record, the remaining record conclusively negates the factual predicates that Anderson has to show. I also want to... Judge McBride has twice rejected the notion of relief. Let's put it that way. Do you think it can be fair a third time if we were to send it back? Absolutely. I don't read anything in Judge McBride's decision to be a criticism of Mr. Schweiger. It is a criticism of the document itself. Aside from his comment on the record citations, the rest of that is just doing what this court asked him to, which is to look at this document and see whether it changes things. So you don't think he's insinuating that Mr. Schweiger participated in some sort of fraud in this document? No, I don't. He's insinuating that between the lines. I do not. Do you think it's unreasonable that Mr. Schweiger saw it that way? Do you think he could see that reasonably as a lawyer? I see that, but I just disagree that that's the case. Well, Judge McBride is a very straightforward individual. He doesn't tend to hide his viewpoints in a case where they're relevant, and so it would seem that if he thought Mr. Schweiger had committed fraud, that he would probably have said so and pursued a sanction hearing on that, because that would be extremely serious misconduct. And Mr. Schweiger would certainly have an opportunity to defend himself if such a thing were to occur. Absolutely. I'm not suggesting Mr. Schweiger did it, but I'm suggesting that if Judge McBride thought Mr. Schweiger did it, he would have had a duty, an affirmative duty, to pursue a sanction proceeding, because you can't let lawyers go around faking documents and committing fraud on court. That's a very serious thing. Yes, it is. It is a very serious thing, and as you said, Judge McBride is very plain spoken, and if he believes that you're misrepresenting something or even things like if you get a citation wrong, he will call you out in court over things like that. So I think if he really had believed that it was manufactured by Mr. Schweiger, he would have said that, and he would have referred him for disciplinary action, but I don't think that was – I don't believe that to have been the inference here. So, yes, I do believe that this case, if it is returned for an evidentiary hearing, should go back to Judge McBride, and it would have a full and fair hearing, and he would make a decision based on that additional evidence in light of the record as it is. Do you have anything further, counsel? I actually would like to turn really quickly to the second item that Mr. Anderson would have to prove, to prove that his case, which is I want to say the record also conclusively negates Anderson's assertion that the government knew the testimony was false. This court's precedent says that he has to prove that the government actually knew the testimony to be false and that it's a very strict burden. Anderson points to that 2009 letter that Mr. Adams wrote shortly after he and the rest of the defendants in this case were arrested and says that proves the government knew he was lying. What that is – what that proves is that there's a prior inconsistent statement, and this court has also said in a couple of cases, and I cite to United States v. Brown, which is a 1981 case, it's 634 F. 2nd. 819, and also to Cutster v. Cockrell, which is a 2002 case. And in those cases, this court said it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements. Ms. Mitchell, those cases are in your brief. I believe they may not be, actually. Okay. Well, but you had the cites all ready to go to tell us today, even though you didn't put them in your brief? Yes, I did. I apologize for that. Did you not end Mr. Swigert ahead before the argument today? I did not. Do you think that was appropriate? Well, I – they're not new cases, so, well, perhaps not. Use cases that you haven't cited and spring them on the opposing counsel. Mr. Swigert, if you would like, you can submit a 28-J on those two cases. You're not required to do so. Ms. Mitchell, if you come aware of cases before oral argument that you plan to use, you need to provide them to over-opposing counsel, regardless of whether they're brand-new cases or old cases. I apologize, Your Honor. I will do that in the future. Thank you. You may proceed. Thank you. I would say this record does not contain any testimonial evidence from AUSA Fred Chapman as to whether or not he believed that Adams' trial testimony was truthful. And Mr. Swigert would say that's what you'd have a hearing for. I guess I'm wondering if what you're saying is this letter saying he was coached doesn't necessarily mean he was coached to lie. I mean, the term coaching kind of is a term you don't like as a lawyer, being accused of coaching. But, you know, you prepare witnesses for testimony all the time as a lawyer, and if they want to call that coaching, that doesn't necessarily mean you told them to lie. It meant that you were talking through how the question might go, how they might be cross-examined and so on, which is perfectly appropriate. I agree with that. But part of my point was that Mr. Chapman passed away in December of 2010. So even if there is an evidentiary hearing, we won't get an answer from him. But what we do have in this record is the testimony from the case agent, and he testified at Adams' sentencing hearing. And this is in part of the documents that I supplemented the record with, that he was specifically asked by Adams' attorney, do you believe his trial testimony was truthful? And he said yes. So we have sworn testimony from the case agent who would have been aware of the entire investigation, be involved in the investigation, that he believed that Mr. Adams' testimony was truthful. So as I said, I think the record conclusively negates the facts that Mr. Anderson has to prove to prove his claims, and that's the reason that a hearing was not necessary in this case. And if there are no other questions, I would just ask the court to affirm the district court's decision denying Mr. Anderson's 2255 without a hearing. And if the case is remanded, I'd ask that it be returned to Judgment Bride. Thank you, Ms. Mitchell. We have your argument. Mr. Swigert, you've saved time for rebuttal. Thank you. I will try to keep a closer eye on the clock, Your Honor. Good. This is not an issue of form over substance, and I think the court exalts the use of affidavits and other such manners, but this is kind of the way the things rolled into this matter. The letters were what the letters were. And Rule 8 of 2255 specifically states that letters and affidavits and other such matters can be used in support of a 2255 hearing. And so I think what we're doing in this matter is exalting form over substance, and basically it's not the question of what the letter, if it's in the proper form or if it has all the papers. No, no, I wasn't trying to suggest you had to have an affidavit. I was simply saying it was not a matter of contradictory affidavits. But let me just ask you, what about other than the term coaching, which, again, people use in a lot of different contexts, but it doesn't necessarily mean you were told to lie. Where in here does it say that the AUSA told him to lie as opposed to he decided to lie to benefit himself, which sadly does happen? A potential defendant thinks if I say XYZ did it, then I'll be off the hook and I'll get a little bit of a better deal on my armed robbery or whatever. Where does it say to the contrary of that? I believe that this court answered that concern in the panel opinion when Judge McBride impliedly stated that the U.S. attorney coached Adams to testify falsely. And I believe Judge McBride termed that incredible. And he stated that, well, they would have had to go out to the jail. The attorney would have had to have been there, yada, yada, yada. And all of that, of course, is extra record. We really don't know. But I'm not asking about other documents. I'm asking that this one doesn't say coach falsely says I lied. I Mr. Adams lied. He definitely says that. But he doesn't say Mr. Shatman told me to lie. I believe that is also also around the surrounding circumstances that were laid out in the district court's prior opinion that basically there were several contacts around Mr. Adams at the time confirmed by other persons at the jail and that basically the U.S. attorney and other persons were out there at the jail interviewing. Now, that might be unremarkable in the common sense, but it's certainly remarkable here that we had a letter before he testified I made this stuff all up. He then testifies to the opposite of that, saying Mr. Anderson forced me. And now we have another declaration by the same individual saying, nope, I made all that stuff up. And so it certainly I mean, again, just as you don't want to be accused of faking this letter, which I think is totally fair on your part. You don't want to accuse a lawyer of telling someone to lie just because they meet with the person and talk to them about how the direct testimony might go, how the cross examine my cross examination might go prepping for which happens all the time. And these are wonderful questions that should not be answered by affidavit. And I don't think this court should lose focus on this particular issue. We're not here to solve the matter of what exactly happened at the jail. The question is whether there is sufficient evidence to raise beyond the low bar that is set by for evidentiary hearings and federal court. And is there any evidence that proves that he is conclusively entitled to no relief. That is not what occurred in this case, there is some evidence as to that. And then all of these other issues can be hashed out at the proper time in front of whichever judge this court puts us back in front of. But that's the issue. It's not trying to solve the matter, it's trying to solve the issue whether of an evidentiary hearing, whether Judge McBride abused his discretion in failing to grant an evidentiary hearing. I truly appreciate the fact that I am able to appear by this court in this remote manner. I appreciate the court's questions, and I would ask this court to rule in favor of Mr. Anderson. Thank you, Counsel. We appreciate the arguments of both sides in this case. They have been helpful to the court. Thank you to both of you. And if I might add, Your Honor, Ms. Mitchell's presentation of that new case would not have swayed my arguments in any manner. So, I'm appreciative of the fact that the court questioned that, but I am not concerned about her failing to present that to me. Thank you very much. We appreciate that. It's just a good learning experience for us all, though. And I did want to add, Your Honor, if I could briefly, your court deputy has been extremely helpful in setting these arguments up. She has been absolutely wonderful in being available to answer all questions and to run us through the drills to get us here. And I would compliment your staff highly on the way this has been carried out. Well, we appreciate that feedback. We concur wholeheartedly with that comment. Rule in your favor on that one. Thank you. Thank you very much. We're going to submit this case, and we're going to take a 10-minute recess before considering the remaining two cases. Thank you to you both. Thank you.